IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

------------------------------------------------------------X

HORTENCIA CAMARGO INDIVIDUALLY AND
AS REPRESENTATIVE OF RAMIRO, ROMAN
FAUSTINO, ROMEO, AND ROQUE SANTIAGO CAMARGO
MINOR CHILDREN

**Plaintiffs**

UNITED STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT; AGENT GABRIEL GAYTAN IN
HIS INDIVIDUAL CAPACITY AND
THE UNITED STATES OF AMERICA
**Defendants**

------------------------------------------------------------X

United States District Court
Southern District of Texas
FILED

JUL 2 2 2015

David J. Bradley, Clerk

**COMPLAINT**

Civil Action No.
**M-15-316**

**JURYTRIAL DEMANDED**

## PRELIMINARY STATEMENT

1.   This action challenges the unwarranted and unconstitutional abuse of power by United States Immigration and Customs Enforcement ("ICE") agents against law abiding citizens.   Plaintiff Hortencia Camargo, and her children Ramiro Lee (14), Roman Faustino (7), Romeo Luciano (4), and Roque Santiago (3) Camargo, United States citizens who were abused by and under the directions and supervision of Defendant ICE Agent Gabriel Gaytan.   The ages of the children presented are the ages at the time of the event. The event took place in McAllen Texas, on July 23, 2013 ("the incident") at the home of Hortencia Camargo and her husband Eli Campos Camargo. The injuries sustained by the Plaintiffs happen during the arrest of Eli Campos Camargo, the father of the children.

2.      Hortencia Camargo was sexually harassed by Gabriel Gaytan who requested sexual favors including oral sex during the incident and the search of Mrs. Camargo's house, after the arrest of Eli Camargo.

3.      Ramiro Camargo, a fourteen (14) years old child was beaten by Gabriel Gaytan after Ramiro was handcuffed and laying on the ground. He was later seen by a doctor who confirmed that Ramiro had been injured in his groin area, ribs, back, right ankle and other areas of his body. Agent Gaytan wrongfully arrested Ramiro at the end of the search of the house and presented bogus charges. The charges were later dismissed by the local Juvenile Court.

4.      Roman Faustino suffers from an extreme allergic condition that could be fatal, and he suffered an allergic reactions the day of the incident as a result of Agent Gaytan's refusal to let him into the house.

5.      Roque Santiago was only 3 at the time of the incident and Agent Gaytan refused for hours to allow Mrs. Camargo to change Roques soiled diaper, and as a result the child suffered from diaper burns.

6.      Agent GAYTAN's callous and abusive actions are unjustifiable. GAYTAN assaulted Ramiro as GAYTAN beat him after Ramiro had been handcuffed and was laying on the ground. GAYTAN made deplorable sexual advances against Ms. CAMARGO in front of her son Ramiro.

7.      As a direct result of this traumatic incident, Ramiro, Roman, and Roque Camargo suffered physical and emotional injuries as well as violations of their Fourth Amendment rights. Ramiro Camargo also incurred medical expenses to treat his injuries.  Ms. CAMARGO seeks relief from this Court for the injuries she suffered and the injuries suffered by her children.

## PARTIES

8.   Plaintiff Hortencia Camargo and her children Ramiro Lee, Roman Faustino, Romeo Luciano, and Roque Santiago Camargo, are United States citizen who resides in McAllen, Texas, at the time of the incident described in this Complaint.

9.   Defendant Agent Gabriel Gaytan is an employee of the United States Immigration and Customs Enforcement in McAllen, Texas.  At all times relevant to this Complaint, he was acting in the course and within the scope of his employment.  He is sued in his individual capacity.

10.   Defendant United States of America is the government of the United States and is the appropriate defendant under the Federal Tort Claims Act, 28 U.S.C. §2671, et seq., for the tort claims in this Complaint.

## JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction over the claims in this matter pursuant to 28U.S.C.§1331  because they arise under the Constitution and laws of the United States of America.

12.   Plaintiff exhausted her administrative remedies.  Pursuant to the Federal Tort Claims Act, Mrs. CAMARGO filed an administrative complaint with the ICE and the United States Department of Homeland Security on or about June 26, 2015. I response from ICE has not been received, however the statute of limitations on this claim is about to run out.

13.   Venue is proper in this Judicial district under 28 U.S.C. §1391(b)(2) because the incident giving rise to the claims in the action occurred in this district.

## FACTS

14. On the early morning of July 23, 2013 Agents from the Immigration and Customs Enforcement under the directions of Agent Gabriel Gaytan arrived at the house of Hortencia Camargo to serve a search warrant and to execute an arrest warrant for Eli Campos Camargo the husband of Hortencia Camargo. It was approximately 4:00 am. Hortencia Camargo was already up early when she heard a siren outside her home and than shortly after her door bell rung, when she answered an agent informed her that they were on the premises, outside of the home, and that she needed to open the door because they were there to execute the search and arrest warrant. Ms. Camargo replied that she would dress up and would come over to open the door to the agents. Immediately after she hanged the phone the front door of her house was knocked down by the ICE Agents who stormed into the house with their machine guns ready to fire. At that time she believed they were indeed not agents and ran to her alarm and pushed the emergency POLICE CALL button.

15. Ms. Camargo was in her underwear and on the top she was wearing a camisole of a transparent material that exposed her breasts. Ms. Camargo was handcuffed and placed in a sofa practically naked. Her husband Eli Campos Camargo was placed under arrest, handcuffed, and taken out of the house immediately and within minutes. Romeo and Roque, the two little ones were sleeping in Mrs. Camargo's bedroom were woken up and shoved from the bed. They both half asleep stumbled out from the bedroom door and walked into the living room and sat with Ms. Camargo in the sofa.

16.     The two older children, Ramiro and Roman, were sleeping in underwear in their bedroom with the door locked. Mrs. Camargo informed the officers that the only two other persons in the house were her children Ramiro and Roman. She informed the officers of their ages 14 and 7, and that fact that Ramiro was a big boy. When asked is any other adult males where in the home she said no. The officers than stormed the room of the boys with their weapons drawn screaming and yelling.  Ramiro got terrified and tried to protect his little brother Roman by trying to put him into the closet. Unaware of what was happening, unaware that the individuals at this house were federal agents, and believing that what was happening was a "home invasion" Ramiro tried to defend himself and little brother. However, he was knocked down by the federal agents and handcuffed. After Ramiro was handcuffed with his hands on his back, unable to move, and laying on the ground, Agent Gabriel Gaytan assaulted Ramiro by striking Ramiro with his knee and kicking Ramiro with his boots in his groin area. While the incident was taking place in children's bedroom Mrs. Camargo never stop screaming that he son was only 14 years old. When she asked Gaytan how could he beat he child even after she repeatedly screamed his was a child. Mr. Gaytan than laughed out loud and said he didn't hear anything. At that time one of his fellow agents looked right at him and told him in front of all the agents that not only did Mrs. Camargo say it but that she was yelling it out loud.

17.     Ramiro and Roman were brought out of the room and placed in the sofa with Ms. Camargo and the little ones, Roque and Romeo. Roque and Romeo were over their mother trying to cover her and she was practically naked. Even though she pled for a long time to be allowed to put some clothes one, GAYTAN refused to let her dress up and told

her that her inconvenience was not his priority. About two hours later one of the other agents threw a blanket over the back Ms. Camargo to cover her body. She asked him to please place the blanket in front of her instead. He did.

18.     The search of the house lasted from approximately 4:30 am in the morning until 3 pm in the afternoon. The ICE agents working under the supervision of GAYTAN unnecessarily damaged the house in many locations including the stove, doors, walls, etc. GAYTAN in repeated occasions told Ms. Camargo that they were there to find the "mother load" including drugs, weapons, money, etc. There was nothing found as a result of the search. There were no weapons found, no drugs found, no money found.

19.     After being detained in the living room for some time, Ms. Camargo was moved to a patio outside of the house with all her children.  It was the end of the month of July and the temperature that day was a scorching 99 F. Ms. Camargo and the children were directly under the sun. Ms. Camargo pled with the officers to allow at least Roman to stay inside the house because he suffers from an extreme and dangerous allergic condition but GAYTAN refused to move Roman into the house.  After many repeated pleas and noticing that Roman's skin was getting an allergic reaction, Roman was placed in a chair right on the doorway. He was not allowed to be inside. Later that day Roman experienced an allergic reaction which required an injection to stop the effects.

20.     Ms. Camargo also pled for diapers to change Roque, the youngest of his kids, who had a soiled diaper. Once again, GAYTAN refused Ms. Camargo to get clean diapers from inside the house stating this her convenience or the convenience of her children were not his priority. After a while Ms. Camargo removed Roque's soiled diaper and left him

naked. Eventually one of the other agents gave Ms. Camargo a clean diaper, however. Roque suffered substantial diaper rash.

21.        At approximately 3 pm, GAYTAN told the agents that the search was over and to leave the premises. Only GAYTAN and another agent remained. GAYTAN asked Ms. Camargo to go into the kitchen of the house and placed all the children in Ms. Camargo's bedroom which is immediately adjacent to the kitchen. While at the kitchen GAYTAN told Ms. Camargo that it was now time to show him gratitude because he could have killed her husband and her son Ramiro and he did not do so. GAYTAN kept on repeating Ms. Camargo to show some gratitude and started pointing to his penis. GAYTAN told Ms. Camargo that he wanted her to perform oral sex on him and that he could still kill her son Ramiro or change and ruin his life.  Ramiro was listening to the conversation and came out of the room and told GAYTAN that his mother was not going to show him any gratitude. Ramiro than went on to questioned GAYTAN why he had removed or hid the ID batch that he earlier had over his head during the search. GAYTAN got extremely upset and stated since the search was over he no longer legally needed to have it exposed. Ramiro than asked him than to leave his mother alone and leave their home immediately. Gaytan in a rage stated he was indeed going to ruin Mrs. Camargo's sons life and had Ramiro arrested and Ramiro was taken into custody.  After this happened GAYTAN left the premises.

***Agent GAYTAN was acting in the course and within the scope of his employment with ICE.***

22. Throughout the course of his encounter with Mrs. CAMARGO and Ramiro, Roman Faustino, Romeo, and Roque Santiago Camargo, Defendant Agent GAYTAN was acting in the course, and within the scope and authority, of his employment.

23. ICE enforces federal laws governing border control, customs, trade, and immigration to promote homeland security and public safety.   Its officers are  empowered to enforce certain laws,  including  immigration  and  customs laws.   *See* 8  U.S.C.   §1357  and  8 C.F.R.  §287.5.

24. As  a  ICE  officer,   and  to  achieve   ICE 's  goals,   Agent  GAYTAN   is authorized to search without a warrant and make arrests of individuals pursuant to 8 U.S.C.  §1357  and  8 C.F.R.  §287.5.   The search of Ms.  CAMARGO's house and were conducted under that authority.

25. However, the U.S. Constitution prohibits him from using excessive force, from making  arrests  without  probable  cause  that  an  individual  has  committed  or  is committing an offense, and from effecting unreasonable seizures of a person.

***Ms. CAMARGO and Ramiro, Roman Faustino, Rome, and Roque Santiago Camargo
suffered physical and emotional injuries as a result of Agent GAYTAN's actions.***

26. As a direct and proximate result of Agent GAYTAN's actions, Ramiro Camargo was  injured in his groin area which may leave permanent effects, upper body, and extremities. To date he experiences pain in his groin area. The cost of treating his injuries was approximately $100.00 dollars.

27. As a direct and proximate result of Agent GAYTAN's actions, Roman Camargo experienced an unnecessary allergic reaction which required an injection and placed his life in danger.

28. As a direct and proximate result of Agent GAYTAN's actions, Roque Camargo was injured with severe diaper burns.

29. As a direct and proximate result of Agent GAYTAN's actions, Ms. Camargo was sexually harassed and intimidated by GAYTAN. Furthermore, GAYTAN threatened that he could kill Ramiro Camargo or ruin his life if Ms. Camargo did not comply with his request.

30. In addition to the physical injuries caused by Agent GAYTAN's abusive behavior, Ms. CAMARGO and her children suffered severe emotional distress as a direct and proximate cause of his actions. Agent GAYTAN intended to cause them emotional distress with his purposeful actions.

31. Ms. CAMARGO cannot understand why this incident occurred or why Agent GAYTAN used unjustified, excessive, and disproportionate force against her and her children.  As a result of this incident, Ms. CAMARGO and her children now distrusts all law enforcement agents, and specially the three younger ones who continue to get extremely scared when they see a patrol car, a law enforcement officer, or hear a siren from the police or ambulances and literally tremble with fear. Her 7 year old required speech therapy after the incident due to traumatic incident that caused him to regress in speech.

## CAUSES OF CTION

## FIRST CAUSE OF ACTION
### False Arrest, and False Imprisonment in Violation of the Fourth Amendment to the U.S. Constitution Against Defendant Agent GAYTAN
### *(Bivens* Claim)

32. Plaintiff incorporates paragraphs 1-31 as set forth above.

33. As a direct result of his actions set forth in this Complaint, Defendant Agent

GAYTAN acted under the color of federal law to deprive Plaintiff R AM I R O

C AMARGO of his right to be free from by seizing, arresting and detaining him without

reasonable suspicion or probable cause that he was committing or had committed a crime,

in violation of the Fourth Amendment to the U.S. Constitution.

34. This cause of action for the violation of Plaintiffs Fourth Amendment right is

brought pursuant to *Bivens v. Six Unknown Agents,* 403 U.S. 388 (1971).

## SECOND CAUSE OF ACTION
### Excessive Force in Violation of the Fourth Amendment to the U.S. Constitution Against Defendant Agent GAYTAN
### *(Bivens* Claim)

35. Plaintiff incorporates paragraphs 1-31 as set forth above.

36. Defendant Agent GAYTAN acted under the color of federal law to deprive

Plaintiff of his right to be free from unreasonable seizures, as guaranteed by the Fourth

Amendment to the U.S. Constitution, by using excessive force against Plaintiff in

arresting him.

37. Defendant Agent GAYTAN's use of force directly and proximately caused physical and emotional injury to RAMIRO CAMARGO. The force was excessive under the circumstances set forth in this Complaint and was objectively unreasonable.

38. This cause of action for the violation of Plaintiffs Fourth Amendment right is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

### THIRD CAUSE OF ACTION
### Battery in Violation of Texas Law Against Defendant United States of America
### (Federal Tort Claims Act claim)

39. Plaintiff incorporates paragraphs 1-31 as set forth above.

40. Defendant Agent GAYTAN, in violation of Texas law, intentionally and knowingly, directly and indirectly, caused physical contact with Ramiro Camargo, Roman Camargo, and Roque that he knew, or should have known, was offensive and unreasonable.

41. Defendant Agent GAYTAN committed these acts as an employee of the United States Department of Homeland Security/ICE while acting in the scope of his employment: he acted within the scope of the general authority granted to him, in furtherance of his employer's business, and for the accomplishment of the objectives for which he was hired.

42. Pursuant to the Federal Ton Claims Act, Defendant United States of America is liable for the actions of Defendant Agent GAYTAN.

43. Plaintiff incorporates paragraphs 1-31 as set forth above.

44. Defendant Agent GAYTAN, in violation of Texas law, intentionally and knowingly physically injured RAMIRO, ROQUE, and ROMAN CAMARGO. He also intentionally and knowingly threatened RAMIRO CAMARGO with imminent bodily harm or death. RAMIRO, ROMAN, and ROQUE CAMARGO's injuries,

described in this Complaint, were directly and proximately caused by Defendant Agent GAYTAN's actions.

45. Defendant Agent GAYTAN committed these acts as an employee of the United States DHS/ICE while acting in the scope of his employment: he acted within the scope of the general authority granted to him, in furtherance of his employer's business, and for the accomplishment of the objective for which he was hired.

46. Pursuant to the Federal Tort Claims Act, Defendant United States of America is liable for the actions of Defendant Agent GAYTAN.

## FIFTH AND SIXTH CAUSE OF ACTION
### False Arrest and False Imprisonment in Violation of Texas Law Against Defendant United States of America (Federal Tort Claims Act claim)

47. Plaintiff incorporates paragraphs 1-31 as set forth above.

48. Defendant Agent GAYTAN willfully detained Ramiro Camargo without authority of the Law by seizing him, placing handcuffs on him, and keeping him in the custody of ICE without his consent in violation of Texas law.

49. Defendant Agent GAYTAN committed these acts as an employee of the United States ICE while acting in the scope of his employment: he acted within the scope of the general authority granted to him, in furtherance of his employer's business, and for the accomplishment of the objectives for which he was hired.

50. Pursuant to the Federal Tort Claims Act, Defendant United States of America is liable for the actions of Defendant Agent GAYTAN.

## SEVENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress in Violation of Texas Law Against Defendant United States of America
### (Federal Tort Claims Act claim)

51. Plaintiff incorporates paragraphs 1-31 as set forth above.

52. Defendant Agent GAYTAN intentionally caused Ms. CAMARGO and her children severe emotional distress by the actions set forth in this Complaint. The arrest of Ramiro Camargo, use, and threatened use of force were so disproportionate to the circumstances so as to be considered extreme and outrageous behavior. The sexual vexation of Ms. CAMARGO at the hand of Agent Gaytan and to witness the abuse of her children for hours at the hand of GAYTAN and the other federal agents are so extreme that left Ms. CAMARGO with emotional distress.

53. Defendant Agent GAYTAN committed these acts as an employee of the United States ICE while acting in the scope of his employment: he acted within the scope of the general authority granted to him, in furtherance of his employer's business, and for the accomplishment of the objectives for which he was hired

54. Pursuant to the Federal Tort Claims Act, Defendant United States of America is liable for the actions of Defendant Agent GAYTAN.

## EIGHT CAUSE OF ACTION
### Battery in Violation of Texas Law Against Defendant United States of America
### (Federal Tort Claims Act claim)

55. Plaintiff incorporates paragraphs 1-31 as set forth above.

56. Defendant Agent GAYTAN, in violation of Texas law, intentionally and knowingly, directly and indirectly, made sexual demands from Ms. Camargo that he knew, or should have known, was offensive and unreasonable.

57. Defendant Agent GAYTAN committed these acts as an employee of the United States Department of Homeland Security/ICE while acting in the scope of his

employment: he acted within the scope of the general authority granted to him, in furtherance of his employer's business, and for the accomplishment of the objectives for which he was hired.

58. Pursuant to the Federal Ton Claims Act, Defendant United States of America is

liable for the actions of Defendant Agent GAYTAN.

59. Defendant Agent GAYTAN committed these acts as an employee of the United

States DHS/ICE while acting in the scope of his employment: he acted within the scope

of the general authority granted to him, in furtherance of his employer's business, and for

the accomplishment of the objective for which he was hired.

60. Pursuant to the Federal Tort Claims Act, Defendant United States of America is liable

for the actions of Defendant Agent GAYTAN.

## JURY TRIAL DEMANDED

61. Plaintiffs respectfully demands a jury trial on their *Bivens* claims.

## PRAYER FOR RELIEF

62. WHEREFORE, Ms. CAMARGO individually and as representative of Ramiro, Roman Faustino, Romeo, and Roque Santiago Camargo respectfully asks this Court to:

a.   Award compensatory damages for the torts committed against them;

b.   Award compensatory damages for the violation of their constitutional rights;

c.   Award punitive damages in an amount to be determined at trial a

d.   Such other and further relief as this Court deems proper.

Respectfully Submitted,

Hortencia Camargo, Pro Se
3609 Goldcrest Ave
McAllen, TX 78504
Telephone No.: (956) 212-6840
Facsimile No.: (956) 278-3239